UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENRIQUE MARCANO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20-cv-1803 |
| v. | ) |
| | ) Judge Marvin E. Aspen |
| NATIONWIDE CREDIT AND COLLECTION, INC., | ) |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Enrique Marcano brought this lawsuit against Defendant Nationwide Credit and Collection, Inc. ("NCC") under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Now before us are Marcano's and NCC's motions for summary judgment. (Dkt. No. 112, Def.'s Mot. for Summ. J. ("Def.'s Mot."); Dkt. No. 113, Def.'s Br. in Supp. of Mot. for Summ. J. ("Def.'s Br."); Dkt. No. 116, Pl.'s Mot. for Summ. J. ("Pl.'s Mot."); Dkt. No. 116-1, Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.").)[1]  Because Marcano has not demonstrated that he has standing to sue, we dismiss the case without prejudice and deny the pending summary judgment motions as moot.

**BACKGROUND**

The following facts are taken from the parties' Local Rule 56.1 statements and responses, as well as the materials cited therein. (*See* Dkt. No. 115, Def.'s L.R. 56.1 Statement of Material Facts ("Def.'s SOF"); Dkt. No. 116-2, Pl.'s L.R. 56.1 Statement of Material Facts ("Pl.'s SOF");

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

Dkt. No. 130 at 1–10, Def.'s Resp. to Pl.'s SOF; *id.* at 11–15, Def.'s Additional Statement of Material Facts ("Def.'s ASOF"); Dkt. No. 131-1, Pl.'s Resp. to Def.'s SOF; Dkt. No. 135-1, Pl.'s Resp. to Def.'s ASOF.)[2]  The facts are undisputed unless otherwise noted.[3]

NCC is a debt collector as defined by the FDCPA.  (Def.'s Resp. to Pl.'s SOF ¶ 5.)  In July and August 2019, NCC sent Marcano three collection letters regarding debts Marcano incurred for medical treatment.  (*Id.* ¶¶ 7, 8; Pl.'s Resp. to Def.'s SOF ¶¶ 4, 25, 38, 41; Dkt. No. 116-4 at 128–29, 7/8/19 Letter; *id.* at 130–31, 7/16/19 Letter; *id.* at 132–33, 8/19/19 Letter.)

**I.     The July 8 Letter**

The first letter, sent July 8, 2019, is titled "Notice of Collection."  (7/8/19 Letter at 1.)  It identifies the "Originating Creditor" and "Client" as "Northwestern Medicine" and the total amount due as $68.20.  (*Id.* at 1–2; Def.'s Resp. to Pl.'s SOF ¶¶ 9, 14; Pl.'s Resp. to Def.'s SOF ¶ 38.)  The $68.20 total consists of $45.03 owed to Northwestern Memorial Hospital (Account No. 87101107) and $23.17 owed to Northwestern Medical Group (Account No. 87106680).  (7/8/19 Letter at 2; Def.'s Resp. to Pl.'s SOF ¶¶ 9, 10, 12–14, 27.)  On the second page of the letter, the statement "May include other accounts not listed above" appears above "Total Amount Due: $68.20."  (7/8/19 Letter at 2; Def.'s Resp. to Pl.'s SOF ¶ 15.)  The July 8 Letter directs Marcano to make any payment to "Nationwide Credit & Collection, Inc. c/o Evergreen Bank

---

[2] With its reply brief, NCC moved for leave to file a reply in support of its Rule 56.1 statement of material facts pursuant to Local Rule 56.1(f).  (Dkt. No. 133 at 1.)  In this motion, NCC seeks to make minor changes to three proposed statements of fact (Nos. 10, 11, and 14) based on Marcano's responses to these statements, which denied them because they were purportedly nonsensical or vague.  (*Id.* at 1–2; Pl.'s Resp. to Def.'s SOF ¶¶ 10, 11, 14.)  We grant NCC's motion, and we have considered these statements of fact as amended by this motion.

[3] Both Marcano and NCC improperly disputed factual statements that, based on the evidence cited by the parties, are not actually in dispute.  We have considered these facts to be undisputed for purposes of the parties' motions.

Group." (7/8/19 Letter at 1; Def.'s Resp. to Pl.'s SOF ¶ 11.) The letter also includes the following statements:

> If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> Financial Assistance – Northwestern Medicine is committed to providing information to patients who may need financial help to pay their medical bills. For more information or to obtain a free copy of the hospital's Financial Assistance Program policy or application, please call the hospital directly at (630) 933-5574 or visit the hospital's website.

(7/8/19 Letter at 1; Def.'s Resp. to Pl.'s SOF ¶ 25; Pl.'s Resp. to Def.'s SOF ¶ 6.)

Marcano received the July 8 Letter and read it. (Pl.'s Resp. to Def.'s SOF ¶ 4.) He also showed the letter to his counsel, who had been helping him with other debts. (*Id.* ¶ 5.) The July 8 Letter stressed, angered, and confused Marcano. (*Id.* ¶ 17.) In particular, Marcano was confused about the amount he owed and to whom he owed the debt. (*Id.* ¶ 8; Def.'s Resp. to Pl.'s SOF ¶ 35.) Marcano was also worried that if he did not pay the debt disclosed in the July 8 Letter, he would be sued or the debt would be reported to a credit reporting agency and "his credit score would decrease due to the negative credit reporting of the" debt. (Def.'s Resp. to Pl.'s SOF ¶¶ 18, 32, 34; Dkt. No. 116-3, 6/29/21 Decl. of Enrique Marcano ("Marcano Decl."), ¶¶ 3, 4, 6.) Nonetheless, Marcano did not contact NCC to clear up his confusion regarding the July 8 Letter or to dispute the debt disclosed therein. (Pl.'s Resp. to Def.'s ASOF ¶¶ 3, 4.)

As of July 8, 2019, Marcano was insolvent; however, he would have paid the debt disclosed in the July 8 Letter had he known how much he owed and to whom. (Pl.'s Resp. to Def.'s SOF ¶ 15; Def.'s Resp. to Pl.'s SOF ¶¶ 16, 31, 33, 35; Marcano Decl. ¶ 5; Dkt. No. 116-4 at 29–127, 5/10/21 Dep. of Enrique Marcano ("Marcano Dep."), at 38:14-17, 39:5–40:10.) Even so, Marcano has not paid the $68.20 debt disclosed in the July 8 Letter. (Pl.'s Resp. to Def.'s

ASOF ¶ 7; Marcano Dep. at 3:13-14, 33:11-14.) Nor has the July 8 Letter caused Marcano to suffer any financial consequences or incur any other kind of expenses. (Pl.'s Resp. to Def.'s SOF ¶¶ 16, 33; Marcano Dep. at 40:21–41:10.) Since July 8, 2019, the amount of the debt disclosed in the July 8 Letter has not increased. (Pl.'s Resp. to Def.'s SOF ¶¶ 38–40.) No interest is accruing on this debt either. (*Id.*) NCC has not reported the debt disclosed in the July 8 Letter to any credit reporting agency. (Pl.'s Resp. to Def.'s ASOF ¶ 24.) NCC also has not sued Marcano based on the debt disclosed in the July 8 Letter. (*Id.* ¶ 5; Marcano Dep. at 3:13-14, 32:17-24, 33:6-10.)

## II.   The July 16 Letter

The second letter, sent July 16, 2019, is titled "Notice of Collection." (7/16/19 Letter at 1.) It identifies the "Originating Creditor" and "Client" as "Northwestern Medicine" and the total amount due as $1,340.00. (*Id.* at 1–2; Def.'s Resp. to Pl.'s SOF ¶¶ 19, 22, 23; Pl.'s Resp. to Def.'s SOF ¶ 19.) The entirety of this debt is owed to Northwestern Memorial Hospital (Account No. 31889265). (7/16/19 Letter at 2; Def.'s Resp. to Pl.'s SOF ¶¶ 20, 22, 28.) On the second page of the letter, the statement "May include other accounts not listed above" appears above "Total Amount Due: $1,340.00." (7/16/19 Letter at 2; Def.'s Resp. to Pl.'s SOF ¶ 23.) The July 16 Letter directs Marcano to make any payment to "Nationwide Credit & Collection, Inc. c/o Evergreen Bank Group." (7/16/19 Letter at 1; Def.'s Resp. to Pl.'s SOF ¶ 21.) The July 16 Letter also includes the following statements:

> If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> Financial Assistance – Northwestern Medicine is committed to providing information to patients who may need financial help to pay their medical bills. For more information or to obtain a free copy of the hospital's Financial Assistance Program policy or application, please call the hospital directly at (630) 933-5574 or visit the hospital's website.

(7/16/19 Letter at 1; Def.'s Resp. to Pl.'s SOF ¶ 25; Pl.'s Resp. to Def.'s SOF ¶ 19.)

At his deposition in May 2021, Marcano testified that he did not receive the July 16 Letter and that the first time he saw it was "as part of . . . the Complaint."[4] (Marcano Dep. at 3:15-16, 43:15–44:10, 45:17-22.) In support of his June 2021 summary judgment motion, however, Marcano submitted a declaration in which he states that he received the July 16 Letter and read it upon receipt, although he does not state when he first received or read the letter. (Marcano Decl. ¶ 10.) Regardless of when Marcano first received the July 16 Letter, once he read it, he was confused regarding the amount of the debt sought by the July 16 Letter, and he was worried about being sued for not paying this amount. (Def.'s Resp. to Pl.'s SOF ¶¶ 34, 35.) Nonetheless, Marcano did not contact NCC to dispute the debt identified in the July 16 Letter. (Pl.'s Resp. to Def.'s ASOF ¶ 14; Marcano Dep. at 45:17–46:4.)

Marcano was unable to pay the $1,340.00 amount disclosed in the July 16 Letter because he was insolvent at the time. (Pl.'s Resp. to Def.'s SOF ¶ 23; Marcano Dep. at 44:11-17.) Since July 16, 2019, the amount of the debt disclosed in the July 16 Letter has not increased. (Pl.'s Resp. to Def.'s SOF ¶¶ 41, 42.) No interest is accruing on this debt either. (*Id.*) NCC has not reported the debt disclosed in the July 16 Letter to any credit reporting agency, and NCC has not sued Marcano based on this debt. (Pl.'s Resp. to Def.'s ASOF ¶¶ 24, 25.)

### III. The August 19 Letter

The third letter, sent August 19, 2019, is titled "Attention – 2nd Notice." (8/19/19 Letter at 1.) It identifies the "Client" as "Northwestern Medicine" and the total amount due as $1,408.20. (*Id.* at 1–2; Pl's Resp. to Def.'s SOF ¶¶ 25, 27.) The total amount due consists of the

---

[4] The original Complaint does not refer to the July 16 Letter. (*See generally* Dkt. No. 1, Compl.) Presumably, Marcano was referring to the First Amended Complaint, which attached the July 16 Letter as an exhibit and alleged that Marcano only read the letter after NCC produced it as part of this litigation. (Dkt. No. 32, First Am. Compl. ("FAC"), ¶¶ 82–84, 87 & Ex. C.)

5

two accounts identified in the July 8 Letter (Account Nos. 87101107 and 87106680) and the account identified in the July 16 Letter (Account No. 31889265). (8/19/19 Letter at 2.)

The August 19 Letter states that "We sent you a notice around thirty days ago but the account(s) on the reverse side of this sheet still remain outstanding." (*Id.* at 1.) The letter directs Marcano to make any payment to "Nationwide Credit & Collection, Inc. c/o Evergreen Bank Group." (*Id.*) The letter also includes the following statement:

> Financial Assistance – Northwestern Medicine is committed to providing information to patients who may need financial help to pay their medical bills. For more information or to obtain a free copy of the hospital's Financial Assistance Program policy or application, please call the hospital directly at (630) 933-5574 or visit the hospital's website.

(*Id.*; Pl.'s Resp. to Def.'s SOF ¶ 27.)

Marcano received and read the August 19 Letter. (Pl.'s Resp. to Def.'s SOF ¶ 25.) He took the letter to his counsel and asked for assistance with it. (*Id.* ¶ 26.) Although Marcano was confused by the letter, he did not contact NCC to clear up this confusion. (*Id.* ¶ 32.) Nor did he dispute the debt disclosed in the letter. (*Id.* ¶ 31.)

Marcano could not pay the $1,408.20 amount set forth in the August 19 Letter, and he has made no effort to pay the debt. (*Id.* ¶¶ 30, 32.) Yet NCC has not sued Marcano over this amount. (*Id.* ¶ 32.) Ultimately, the August 19 Letter has not financially impacted Marcano in any way. (*Id.* ¶¶ 32, 33; Pl.'s Resp. to Def.'s ASOF ¶ 15.)

### IV. The Current Litigation

The operative First Amended Complaint alleges two claims—a class-based FDCPA claim (Count I) and an individual FDCPA claim (Count II). (FAC ¶¶ 102–19.) Marcano later abandoned his class-based claim (Dkt. No. 121 at 1–2; *see also* Dkt. No. 124 (order striking Marcano's class-based allegations)), so only his individual FDCPA claim remains. For his

individual claim, Marcano contends that the July 8, July 16, and August 19 Letters violate various provisions of the FDCPA. Specifically, Marcano maintains that:

- The July 8 and July 16 Letters are "patently confusing on their face" and violate 15 U.S.C. §§ 1692e, 1692f, 1692g(a)(1), and 1692(g)(a)(2) in the same manner.[5] These letters fail to state the name of the current creditor to whom the debt was owed and confusingly disclose how much was owed and which accounts are included in the total amount due. (Pl.'s Mem. at 2, 3, 13, 15; Pl.'s Resp. to Def.'s SOF ¶¶ 7, 9, 22.)

- The August 19 Letter violates 15 U.S.C. § 1692e "by falsely representing that [NCC] had previously contacted [Marcano] to collect the" $1,340.00 debt first identified in the July 16 Letter; violates § 1692f "by unfairly creating a sense of urgency in [him] as to having to pay the [$1,340.00 debt] by misrepresenting that a previous attempt . . . had been made to collect" the debt; and violates § 1692g by failing "to advise [Marcano] of his right to dispute the [$1,340.00 debt], to request verification as to the [debt], and to request the name of the original creditor of the" debt. Alternatively, Marcano alleges that NCC violated §§ 1692e and 1692f "by falsely representing in the [August 19] Letter that only one letter was previously mailed to [Marcano] relating to the debts at issue[.]" (FAC ¶¶ 37, 41, 116–19.)

---

[5] Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f. Under § 1692g, a debt collector must, within five days of initially communicating "with a consumer in connection with the collection of any debt," send the consumer a written notice identifying, among other things, "the amount of the debt" and "the name of the creditor to whom the debt is owed" unless this information was "contained in the initial communication or the consumer has paid the debt." *Id.* § 1692g(a)(1)–(2).

7

For these alleged violations, Marcano seeks to recover statutory damages, costs, and reasonable attorneys' fees. (FAC at 18 (Wherefore clause); Pl.'s Resp. to Def.'s SOF ¶ 37.)

## ANALYSIS

NCC argues that we should dismiss Marcano's case for two reasons: (1) Marcano does not have standing to sue; and (2) the three letters at issue are not misleading or deceptive as a matter of law. (*E.g.*, Def.'s Br. at 1–3.) Marcano contends that we should grant summary judgment in his favor because it is undisputed that NCC violated §§ 1692e, 1692f, 1692g(a)(1), and 1692(a)(2) of the FDCPA by sending the July 8 and July 16 Letters.[6] (Pl.'s Mem. at 2, 3, 13, 15.) In seeking summary judgment, Marcano also asserts that he has standing. (*Id.* at 13–15.)

We start with the "threshold issue" of whether Marcano has standing to sue.[7] *See Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 284 (7th Cir. 2020). Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "The doctrine of standing enforces this Article III limitation." *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1063–64 (7th Cir. 2020). Consequently, "[t]o invoke the jurisdiction of a federal court, a plaintiff must demonstrate that he has standing to sue[.]" *Id.* This requires the plaintiff "to

---

[6] Marcano does not move for summary judgment with respect to the August 19 Letter, nor does he address this letter in his response to NCC's motion for summary judgment. (*See generally* Pl.'s Mem.; Dkt. No. 131, Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp.").)

[7] Because Marcano and NCC both raised standing in their motions for summary judgment, they are arguably both movants and non-movants on the issue. For simplicity, however, we have considered standing through the lens of NCC's summary judgment motion, treating Marcano as the non-movant and viewing the record in the light most favorable to him. *See Spuhler*, 983 F.3d at 286 ("The standard for demonstrating the jurisdictional facts at summary judgment is whether the plaintiffs have supplied evidence of 'specific facts' that, *taken as true*, show each element of standing." (citation omitted) (emphasis added)); *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 940–41 (7th Cir. 2020) (at summary judgment, the Court "view[s] all facts in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor").

establish that he has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1547 (2016)).  At the summary judgment stage, Marcano must supply "evidence of 'specific facts' that, taken as true, show each element of standing" for each claim he presses in this litigation.  *TransUnion*, 141 S. Ct. at 2208; *Spuhler*, 983 F.3d at 285–86 (citation omitted).

NCC contends that Marcano lacks Article III standing because he has not demonstrated an "injury in fact."  (Def.'s Br. at 7–10.)  Injury in fact "is the '[f]irst and foremost' of standing's three elements."  *Wadsworth v. Kross, Lieberman & Stone, Inc.*, --- F.4th ----, 2021 WL 3877930, at *2 (7th Cir. Aug. 31, 2021) (alteration in original) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S. Ct. 1003, 1016 (1998)).  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Larkin*, 982 F.3d at 1064 (quotation marks omitted).

In the past year, the Seventh Circuit has issued several decisions addressing the injury-in-fact requirement in FDCPA cases.  *See, e.g.*, *Wadsworth*, 2021 WL 3877930, at *2–3; *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 779–81 (7th Cir. 2021); *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1044–45 (7th Cir. 2021); *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 710–11 (7th Cir. 2021); *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899–900 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068–69 (7th Cir. 2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071–72 (7th Cir. 2020); *Spuhler*, 983 F.3d at 286; *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279–81 (7th Cir. 2020); *Larkin*, 982 F.3d at 1066–67.  "These cases involved claims under various provisions of the [FDCPA], but each one

applied the same fundamental principle: a violation of the FDCPA 'does not, by itself, cause an injury in fact' sufficient to confer Article III standing." *Dahl v. Kohn L. Firm*, 853 F. App'x 1, 2 (7th Cir. 2021) (quoting *Markakos*, 997 F.3d at 779); *accord Wadsworth*, 2021 WL 3877930, at *2. Rather, an FDCPA violation causes an injury in fact only if it has "harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Wadsworth*, 2021 WL 3877930, at *2 (quotation marks omitted). "For example, an FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." *Markakos*, 997 F.3d at 780.

Marcano contends that he has standing to sue because NCC's letters caused him to alter his response to the debts disclosed in these letters. (*See* Pl.'s Resp. at 11–14.) Specifically, Marcano contends that the letters confused him regarding how much he owed and to whom; that this confusion caused him to *not* pay the debts; and that this failure to pay "increased the likelihood that the debts would be credit reported." (*Id.* at 12.) Marcano further argues that his nonpayment caused him to worry about the debts being reported to a credit agency or being the basis for a lawsuit against him. (*Id.*)

We are not persuaded. For one thing, worrying about the adverse effects of nonpayment, without more, is not a cognizable injury in fact. Similar emotional states such as anxiety, embarrassment, stress, annoyance, confusion, or aggravation are not themselves concrete injuries that confer standing in an FDCPA case. *Wadsworth*, 2021 WL 3877930, at *3; *Markakos*, 997 F.3d at 781. We see no reason why the Seventh Circuit would treat a state of worry any differently. *See Giannini v. Fin. Recovery Servs., Inc.*, No. 20 C 4212, 2021 WL 164839, at *3 (N.D. Ill. Jan. 19, 2021) ("[A]bsent an allegation tying [the plaintiff's] stress, anxiety, and worry to some detrimental action she took or risked taking related to her outstanding debt, the stress

and worry she allegedly suffered does not alone amount to a cognizable injury."); *see also Tataru v. RGS Fin., Inc.*, No. 18-cv-6106, 2021 WL 1614517, at *3 (N.D. Ill. Apr. 26, 2021) (fear or suspicion of fraud does not constitute a concrete injury in fact).

What is more, there is no evidence that the July 16 Letter or the August 19 Letter influenced Marcano's decision about whether to pay his debts. To the contrary, the undisputed evidence shows that Marcano's lack of financial resources—not confusion stemming from the content of the July 16 and August 19 Letters—prevented him from paying the amounts disclosed therein. (Pl.'s Resp. to Def.'s SOF ¶ 23 (admitting that he would not have been able to pay the debt disclosed in the July 16 Letter "because he was insolvent"); *id.* ¶ 30 (admitting that he could not pay the $1,408.20 amount disclosed in the August 19 Letter).) In fact, although Marcano asserts on summary judgment that he would have paid the amounts disclosed in the July 8 Letter had he known "the identities of the current creditors and the amounts sought" (Marcano Decl. ¶ 5), he notably does not make a similar assertion for either of the amounts disclosed in the July 16 and August 19 Letters. Even if the content of the July 16 and August 19 Letters violates the FDCPA, these violations did not alter Marcano's response to his debts in any way. Marcano therefore has not established that he has standing to pursue an FDCPA claim based on the July 16 and August 19 Letters. *See Spuhler*, 983 F.3d at 283–84, 286 (finding that the plaintiffs did not have standing to pursue claims under 15 U.S.C. §§ 1692e and 1692f because there was no evidence that the omission of certain information from the defendant's letters "had any effect on how the [plaintiffs] responded to the letters or managed their debts"); *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 331–32, 335 (7th Cir. 2019) (finding that the plaintiff lacked standing to bring a claim under 15 U.S.C. § 1692g(a) based on the defendant's incomplete notice where "receiving a complete notice would not have changed anything for" the plaintiff).

11

That leaves the July 8 Letter. At this stage, we assume that the letter's content confused Marcano and caused him to not pay the $68.20 amount due, which he would have paid absent this confusion. (*See, e.g.*, Pl.'s Resp. to Def.'s SOF ¶¶ 16, 17; Marcano Decl. ¶¶ 5, 13.) But the mere fact that the July 8 Letter's content caused Marcano to act differently is not enough. For there to be injury in fact, the letter must have harmed or created an appreciable risk of harm to Marcano. *See, e.g.*, *Nettles*, 983 F.3d at 900 (plaintiff lacked standing where her complaint did "not allege that the [FDCPA] violations harmed her in any way or created any appreciable risk of harm to her"); *see also TransUnion*, 141 S. Ct. at 2205 ("Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." (emphasis in original)). In other words, Marcano's altered response must have been to his detriment. *See Pennell*, 990 F.3d at 1045 ("For the alleged injury to be concrete, a plaintiff must have acted 'to her detriment, on that confusion.'" (quoting *Brunett*, 982 F.3d at 1068)); *Smith*, 986 F.3d at 710 ("[A] consumer's assertion that she was confused by a debt-collection letter does not show injury unless the confusion leads the consumer to take some detrimental step."); *Spuhler*, 983 F.3d at 286 ("[F]or a concrete injury to result from a dunning letter's exclusion of a statement about accruing interest, that exclusion must have detrimentally affected the debtors' handling of their debts."); *Bazile*, 983 F.3d at 281 ("What matters is whether the allegations support a plausible inference that [the plaintiff] suffered a concrete detriment to her debt-management choices."); *Tataru*, 2021 WL 1614517, at *1 (describing Seventh Circuit precedent as "holding that debtors claiming an FDCPA violation must show that the statutory violation . . . caused them to take a detrimental step resulting in a mishandling of their debt").

12

Here, there is no evidence in the record that Marcano's decision to forgo paying the $68.20 amount identified in the July 8 Letter harmed him or created an appreciable risk of harm to him. The amount of the debt disclosed in the July 8 Letter has not increased, and no interest has accrued on the debt (Pl.'s Resp. to Def.'s SOF ¶¶ 38–40), so Marcano's decision to not pay the debt has not caused him to owe more money. NCC also has not reported the debt to any credit reporting agency (Pl.'s Resp. to Def.'s ASOF ¶ 24), so Marcano's decision to not pay has not impacted his credit either. In short, the July 8 Letter has not caused Marcano to suffer any financial consequences or incur any other kind of expenses. (Pl.'s Resp. to Def.'s SOF ¶¶ 16, 33; Marcano Dep. at 40:21–41:10.)

Marcano also asserts that his nonpayment "increased the *likelihood* that the debts would be credit reported." (Pl.'s Resp. at 12 (emphasis added)). But he cites no evidence from the record to support this assertion. *See Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) ("[A]ssertions in briefs are not evidence, nor in this case based on evidence."); *see also TransUnion*, 141 S. Ct. at 2212 (finding that the risk that the defendant would disseminate misleading credit information about the plaintiffs to third parties "was too speculative to support Article III standing" where the plaintiffs did not demonstrate a sufficient likelihood that the defendant would provide this information to third parties). Thus, even if we assumed that having the $68.20 debt reported to a credit agency would concretely harm Marcano, "we cannot simply presume a material risk" of this harm "[b]ecause no evidence in the record establishes a serious likelihood" that NCC or anyone else would report the debt. *TransUnion*, 141 S. Ct. at 2212 (citation omitted). In any event, the plaintiffs in *Pennell*, *Gunn*, and *Brunett* did not pay the debts identified in the letters they received either. *See Pennell*, 990 F.3d at 1043; *Gunn*, 982 F.3d at 1070; *Brunett*, 982 F.3d at 1068. According to Marcano's assertion, this would have

increased the likelihood that these debts would be reported to a credit agency. Yet the Seventh Circuit still found a lack of standing in each of those cases. *Pennell*, 990 F.3d at 1045; *Gunn*, 982 F.3d at 1072; *Brunett*, 982 F.3d at 1068–69. We likewise conclude that Marcano does not have standing to pursue an FDCPA claim on the July 8 Letter.

Citing several cases, Marcano further contends that "the Seventh Circuit has long affirmed that information [that] would impact a consumer's decision as to whether to pay a debt in response to a collection letter is a material harm." (Pl.'s Resp. at 13.) This contention is without merit. Although information "is material if it would influence a consumer's decision . . . to pay a debt in response to a dunning letter," *Boucher v. Finance System of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quotation marks omitted), the mere inclusion of misleading information—which is material by definition, *see id.*—does not itself constitute "harm" sufficient to confer standing. *See Spuhler*, 983 F.3d at 286 (rejecting contention that the misleading nature of the dunning letters, by itself, was enough "to establish a concrete injury necessary for standing"); *Brunett*, 982 F.3d at 1068 ("[A] plaintiff who lacks a concrete injury cannot sue under the Fair Debt Collection Practices Act or a similar statute just because a statement in a letter is incorrect or misleading."); *see also Markakos*, 997 F.3d at 779 ("In the last five months, we've held eight times that a breach of the [FDCPA] does not, by itself, cause an injury in fact. We now repeat that refrain once more."). Indeed, three out of the four Seventh Circuit cases Marcano cites—*Boucher*, *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016), and *Lox v. CDA, Ltd.*, 689 F.3d 818 (7th Cir. 2012)—did not even address standing, and, more specifically, whether the plaintiff had suffered an injury in fact. And the one Seventh Circuit case that did address standing, *Lavallee v. Med-1 Solutions, LLC*, 932 F.3d 1049 (7th Cir. 2019), is distinguishable. In *Lavallee*, the debt collector had already filed a separate

14

debt collection lawsuit against the plaintiff when the alleged FDCPA disclosure violation occurred. 932 F.3d at 1053. The *Lavallee* court found that the plaintiff had standing to sue because if the debt collector had provided the required disclosures, the plaintiff "could have disputed and sought verification of the debts," which would have "halt[ed] the collection litigation." *Id.* at 1053–54; *see also Larkin*, 982 F.3d at 1065 (explaining that the plaintiff in *Lavallee* "suffered an actual harm from the statutory violation: the debt collector had already sued her in state court to collect the debt," and the "collection action would have been frozen in its tracks if [the plaintiff] had disputed the debt or demanded verification as provided in the FDCPA"). Here, though, there is no separate collection action or other adverse proceeding that Marcano could have stopped had he paid the debt identified in the July 8 Letter.

Marcano also cites two cases from Wisconsin's federal district courts, *Heisler v. Convergent Healthcare Recoveries, Inc.*, No. 16-CV-1344, 2020 WL 1249481 (E.D. Wis. Mar. 16, 2020) and *Matthias v. Tate & Kirlin Associates, Inc.*, No. 19-cv-182-slc, 2021 WL 107181 (W.D. Wis. Jan. 12, 2021), but neither case convinces us that he has standing. In *Heisler*, the court found that the plaintiff had standing because he testified that the collection letter at issue "left him unsure as to whom to pay," which was "precisely the sort of harm the [FDCPA] was designed to avoid." 2020 WL 1249481, at *5. But *Heisler* was decided in March 2020, well before the Seventh Circuit issued *Larkin* and its subsequent decisions that have clarified the injury-in-fact requirement in FDCPA cases. After these decisions, we doubt that a plaintiff's uncertainty as to the owner of a debt—without any detriment or risk of detriment resulting from that uncertainty—constitutes an injury that confers standing. As for *Matthias*, it supports our conclusion that Marcano does *not* have standing. In that case, the court rejected *the same exact* contention that Marcano makes here, i.e., "that the Seventh Circuit has long affirmed that

15

information [that] would impact a consumer's decision as to whether to pay a debt in response to a collection letter is a material harm." 2021 WL 107181, at *3–4. As the *Matthias* court explained, the plaintiff "failed to present sufficient evidence to show standing" because even though the collection letters left the plaintiff "unsure about whom to pay," he "did not try to clarify his confusion, did not make a payment, and did not otherwise attempt to manage his debt." *Id.* at *4. Similarly, Marcano has not attempted to clarify his confusion about the debt disclosed in the July 8 Letter, dispute the debt, or pay the debt. (*See* Pl.'s Resp. to Def.'s ASOF ¶¶ 3, 4, 7; Marcano Dep. at 3:13-14, 33:11–14.)

In sum, because Marcano has failed to demonstrate an injury in fact, he does not have standing to pursue his FDCPA claim against NCC. *See TransUnion*, 141 S. Ct. at 2214 ("No concrete harm, no standing."). We therefore dismiss his First Amended Complaint without prejudice for lack of subject matter jurisdiction. *See Markakos*, 997 F.3d at 782 n.1 (dismissal without prejudice is required "when a plaintiff lacks standing"). In light of this dismissal, we deny the pending summary judgment motions as moot. *See Pennell*, 990 F.3d at 1043, 1045 (where the plaintiff lacked standing, vacating summary judgment ruling in the defendant's favor and remanding with instructions to dismiss for lack of subject matter jurisdiction); *Brunett*, 982 F.3d at 1068–69 (same); *see also Bazile*, 983 F.3d at 280 n.3 ("The merits of a dispute can be decided by a federal court only if the court has jurisdiction to do so[.]").

**CONCLUSION**

For the foregoing reasons, we grant NCC's motion for leave to file a reply in support of its Local Rule 56.1 statement of material facts. (Dkt. No. 133.) But we dismiss this case without prejudice and deny the parties' pending summary judgment motions (Dkt. Nos. 112, 116) as moot. This case is terminated. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: October 4, 2021